# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DARNELL LEO GREEN,<br><br>      Petitioner,<br><br>   v.<br><br>DAVID B. LONG,<br><br>      Respondent. | Case No. 1:16-cv-00821-DAD-EPG-HC<br><br>FINDINGS AND RECOMMENDATION RECOMMENDING DENIAL OF PETITION FOR WRIT OF HABEAS CORPUS |

Petitioner, Darnell Leo Green, is a state prisoner proceeding *pro se* with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. In the petition, Petitioner claims that his sentence is "unauthorized" because it was imposed in violation of California law and California Rules of Court. He also appears to challenge his sentence as excessive in violation of the Eighth Amendment of the U.S. Constitution. For the reasons discussed herein, the undersigned recommends that the petition for writ of habeas corpus be denied.

## I. BACKGROUND

In 1998, Petitioner was convicted by a jury in the Stanislaus County Superior Court of burglary and multiple counts of robbery of an inhabited dwelling, with firearm and gang enhancements. On November 23, 1998, Petitioner was sentenced to 48 years in prison. On direct appeal, Petitioner's conviction was affirmed, but the case was remanded for resentencing based on the determination that the sentencing court (1) "misunderstood the scope of its discretion to impose concurrent sentences for defendants' current convictions, and erroneously

believed consecutive sentences were mandatory under [California Penal Code] section 667, subdivision (d)"; and (2) "erroneously sentenced appellants on count 4 [attempted robbery] as if it were a completed robbery." *People v. Richardson*, 2001 WL 1297500, at *36 (Cal. Ct. App. 2001). The sentencing court was instructed "to exercise its discretion to impose concurrent or consecutive sentences," and to "correct the sentences for each defendant in count 4 to reflect a conviction of attempted robbery, not robbery." *Id.* The judgments were otherwise affirmed. *Id.* Petitioner's petition for review was denied by the California Supreme Court. (LD[1] 24.) On remand, the trial court resentenced Petitioner to 46 years in prison. (*See* ECF No. 1 at 18-20; LD 13 at RT, vol. X, pp. 1885-1893.)

Petitioner filed a petition for writ of habeas corpus (the "first state petition") in Stanislaus County Superior Court on September 24, 2009, along with an explanation for filing a delayed petition. (LDs 25, 26.) The state court denied the first state petition because the petition was not signed by Petitioner:

> A petition for writ of habeas corpus has been filed on behalf of Darnell Leo Green. In this petition, it is alleged that Green is incarcerated in Arizona. The petition is signed by David Turner, who describes himself as a "jailhouse lawyer." Green never signed the petition. The petition, unsigned by the petitioner, is defective.
>
> Accordingly, the Petition is DENIED.

(LD 27.)

More than a year later, on December 16, 2010, Petitioner filed a second petition for writ of habeas corpus (the "second state petition") in Stanislaus County Superior Court. In this petition, Petitioner raised the same claims as he had in his first state petition, including that his trial and appellate counsel rendered ineffective assistance resulting in the denial of Petitioner's due process rights. (LDs 25, 26, 28, 29.) On December 22, 2010, the Stanislaus County Superior Court denied the second state petition, stating:

> On or about December 16, 2010, Petitioner filed his Petition for Writ of Habeas Corpus, in which he alleges that his trial and appellate counsel were sufficiently ineffective that he was denied due process of law. Petitioner's petition is untimely. As explained below, he has established absolutely no reason for the delay. Accordingly, the petition will be

---

[1] "LD" refers to the documents lodged by Respondent on September 21, 2016. (ECF No. 11.)

denied on that ground.

Defendant was sentenced on October 9, 2002, more than eight years ago. He asserts two primary reasons for not filing his petition earlier. First, he alleges that he did not complete high school and has poor reading and comprehension skills, and is a layperson at law. Second, he alleges that he had only limited time available to him at the prison law library.

Petitioner seeks relief based on ineffective assistance of counsel. Petitioner fails to explain why it took him eight years to identify counsel's performance as defective. While many issues on habeas may not be time-sensitive, Petitioner's allegations here are. He alleges that certain eye witnesses mis-identified him. The passage of eight years will make it extremely difficult to re-try this case, assuming that Petitioner might be successful. Thus, the timeliness of the Petition herein is more important than might be the case in other contexts.

Further, the court notes that Petitioner filed exactly the same papers in September 2009. That petition was rejected because Petitioner failed to sign the Petition and attach[] supporting documents, including the required verification. Petitioner fails to provide any reason whatsoever for the additional 15-month delay between the time he was notified of those deficiencies and the filing of the papers now before the court.

For each of the foregoing reasons, the petition is DENIED.

(LD 29.)

Just over four years later, in a letter dated February 12, 2015, a prison official informed the Stanislaus County Superior Court of what appeared to be an error in the abstract of judgment and/or minute order regarding Petitioner's sentence, and specifically regarding the application of an enhancement for possession of a firearm. (ECF No. 1 at 28.) In response, the Stanislaus County Superior Court agreed to stay the firearm enhancement, which resulted in lowering Petitioner's 46-year sentence by 4 months to 45 years and 8 months. (ECF No. 1 at 29; LDs 30, 31.)

On November 10, 2015, Petitioner filed a third petition for writ of habeas corpus (the "third state petition") in Stanislaus County Superior Court. (LD 32.) In this petition, Petitioner argued that his sentence is "unauthorized" because it was imposed in violation of California law and California Rules of Court. (*Id.*) The third habeas petition was denied by the Stanislaus County Superior Court on November 19, 2015. (LD 33.) In denying the petition, the Stanislaus County Superior Court stated:

The petitioner claims his 1998 sentence was unauthorized. This should have been raised on appeal and any previous petitions for habeas corpus relief. The petitioner gives a name of a case (Vargas 2014) in his petition but refers the Court to his "Attachment" for

supporting cases and legal authority with no reference to a <u>Vargas</u> case or any law supporting the notion his sentence is unauthorized. The information in his attachment attacks the sentencing in general which was address[ed] in the Appellate Opinion and on remand back to the court. The Court resentenced the petitioner accordingly and subsequently he was resentenced a couple of times after requests for clarification from the California Department of Corrections. On 05/07/15 he was resentenced to less time than contemplated by the original trial Judge and incurred a benefit of a sentence reduction.

On the grounds the sentencing issues were addressed on appeal, the petitioner does not state any new grounds for review and he doesn't provide any facts establishing good cause for the delay and for filing a subsequent habeas petition, the petition is denied.

Based on the aforementioned reasons the petition for habeas corpus is DENIED in its entirety.

(*Id.*)

On December 14, 2015, Petitioner filed a petition for writ of habeas corpus with the California Court of Appeal, which was summarily denied on February 9, 2016. (LDs 34, 35.) On February 22, 2016, Petitioner filed a petition for writ of habeas corpus with the California Supreme Court, which was summarily denied on May 11, 2016. (LDs 36, 37.)

On June 13, 2016, Petitioner filed the present federal petition for writ of habeas corpus, challenging his sentence as unauthorized. (ECF No. 1.) Respondent filed an answer to the petition, and Petitioner filed a traverse. (ECF Nos. 10, 14.)

## II. STATEMENT OF UNDERLYING FACTS[2]

Defendants Richard Alexander Richardson, Milton B. Harrell, and Darnell Leo Green were convicted of several crimes arising from a home invasion robbery. In addition, numerous gang enhancements, gun enhancements, and prior conviction allegations were found true. Defendants have appealed raising numerous claims of error.

FACTUAL OVERVIEW

Shameka Gray was living with Sarah Hodge and her three-year-old son. On the evening of December 3, 1997, Sarah's brother Leslie Hodge, Leslie's friend Antoine McElvaine, and Jill Townsend were visiting. Shameka was in her bedroom; the others were in the front room.

There was a knock on the door. Sarah asked, "Who is it?" She did not understand the reply and asked again. The door was kicked open and several men dressed in dark clothing with masks on their faces ran in. They were armed with guns. They told the occupants to lie down. Leslie ran down the hall and Sarah ran after him. Jill and Antoine remained in the front room, with Jill holding Sarah's son.

---

[2] The Court relies on the California Court of Appeal's October 24, 2001, opinion for this summary of the facts of the crime. *See Vasquez v. Kirkland*, 572 F.3d 1029, 1031 n.1 (9th Cir. 2009).

4

Some of the intruders confronted Leslie Hodge in the bathroom. He was asked to turn over his money. Leslie gave the men $40, a ring and a necklace. He was told to strip. He complied and was then wrapped in a blanket. One of the intruders spread Leslie's buttocks apart, apparently to check for hidden drugs. Immediately after the robbery Leslie told police officer Benito Chavez that Richardson had ordered the other subjects to take Leslie's clothes off, put a sheet over his head, and do a pocket check.[3] At trial, Leslie said he could not identify any of the intruders, denied that he previously identified any of the intruders, and testified he could not even identify their race.

Sarah was stopped in the door to her bedroom. One of the robbers instructed another to put some clothes over Sarah's head; he complied. The robbers ransacked the room. They asked Sarah where she kept her purse; she did not answer. Sarah asked one of the intruders if her son was okay; he said that he was. The intruders left.

When questioned by police that evening, Sarah told officers that she recognized Green and Richardson from their voices. She stated that Richardson was the one who told her that her son was okay. Sarah was sure of her identifications. When questioned a few days after the crime, she stated that Richardson told her to get down. She heard Green tell others to strip Leslie. Harrell and Richardson were going through Sarah's drawers and Green stayed with Leslie. At the preliminary hearing, Sarah testified that before her face was covered she recognized Green, Richardson, Harrell, and Damon Morrison.[4] She had known all of them before the robbery occurred. At trial Sarah testified she could not positively identify who was at her house that evening. She said it could have been anybody. She had a reasonable doubt that the defendants were the ones who robbed her. She also testified at trial that no one asked her for property during the robbery.

Shameka was in her room when she heard screams and footsteps. She sat on her bed and then opened her door. Richardson motioned for Shameka to go back in her room. She shut the door to her room. She heard Green tell Leslie what to do. Shameka hid her purse. Harrell came in and told Shameka to get down. Because she knew Harrell Shameka said to him, "It's Meek."[5] One of the intruders took food stamps from Shameka's jacket.

When interviewed by police the evening of the crime, Shameka identified Harrell, Green, and Richardson as the robbers. When interviewed a few days later, Shameka again identified Harrell and Richardson as two of the robbers, and said she also recognized Green's voice. At the preliminary hearing, Shameka identified the three defendants and their activities. At trial, she testified that she thought she saw Harrell and Richardson, but she wasn't sure now. She could not positively say that Harrell, Green, and Richardson were involved in the robberies.

Jill Townsend turned to the wall with Sarah's son when the intruders came through the door. Someone asked her where her purse was; she said she did not have one. One of the intruders put a jacket over her head. Townsend was not able to identify anyone at trial. She testified that she might have told officers that she recognized Green's voice and recognized Morrison. After the robbery, Townsend received numerous pages on her pager displaying the number 187, which is the

---

[3] A pocket check is a slang term for going through a victim's pockets for money and/or drugs.
[4] Morrison was not a defendant at trial.
[5] Meek is Shameka's nickname.

Penal Code number for murder. In addition, one night she received 45 hang-up calls. She said she was not fearful.

McElvaine remained in the front room during the robbery. He had $2 taken from him. After the robbery McElvaine told officers that he did not know anything. The officers believed he was being uncooperative and evasive.[6]

Immediately after the robbers left the home, the victims all discussed who they believed was involved. Sarah called her father; he arrived and called police. About 15 minutes after the robbery Sarah received a call from Green. She accused him of the robbery, he denied being in her house that evening.

Detective Allen Brochinni is a member of the police force's gang unit. He testified that he is familiar with the Oak Street Posse (OSP), a criminal street gang. The OSP claims the color black, and associates with the number 105 because that is the original address on Oak Street where the gang began. Based on photographs, tattoos, gang rosters, police reports, and observations, it was Detective Brochinni's opinion that Green and Richardson were current members of the OSP when the crimes were committed and Harrell was an associate of the gang. Detective Brochinni testified regarding numerous crimes committed by members of the OSP.

Within a day or two after the robbery Sarah went to her car and found the number 105 written in dust on a window.[7]

*People v. Richardson*, No. F032406, 2001 WL 1297500, at *1–2 (Cal. Ct. App. Oct. 24, 2001) (footnotes in original).

As noted previously, following his conviction, Petitioner was sentenced to 48 years of imprisonment, which was subsequently reduced to 46 years, then to 45 years and 8 months.

## III. STANDARD OF REVIEW

Relief by way of a petition for writ of habeas corpus extends to a person in custody pursuant to the judgment of a state court if the custody is in violation of the Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); *Williams v. Taylor*, 529 U.S. 362, 375 (2000). Petitioner asserts that his sentence is unauthorized because it was imposed in violation of California law and California Rules of Court. The challenged sentence arises out of the Stanislaus County Superior Court, which is located within the Eastern District of California. 28 U.S.C. § 2254(a); 28 U.S.C. § 2241(d).

---

[6] There was testimony that McElvaine was robbed of $1,200 the day before but he did not report this robbery.

[7] Sarah's car had broken down before the robbery and was parked a short distance from her home.

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment. *Lindh v. Murphy*, 521 U.S. 320 (1997); *Jeffries v. Wood*, 114 F.3d 1484, 1499 (9th Cir. 1997) (en banc). The instant petition was filed after the enactment of AEDPA and is therefore governed by its provisions.

Under AEDPA, relitigation of any claim adjudicated on the merits in state court is barred unless a petitioner can show that the state court's adjudication of his claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); *Davis v. Ayala*, 135 S. Ct. 2187, 2198 (2015); *Harrington v. Richter*, 562 U.S. 86, 97–98 (2011); *Williams*, 529 U.S. at 413. Thus, if a petitioner's claim has been "adjudicated on the merits" in state court, "AEDPA's highly deferential standards" apply. *Ayala*, 135 S. Ct. at 2198. However, if the state court did not reach the merits of the claim, the claim is reviewed *de novo*. *Cone v. Bell*, 556 U.S. 449, 472 (2009).

In ascertaining what is "clearly established Federal law," this Court must look to the "holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision." *Williams*, 529 U.S. at 412. In addition, the Supreme Court decision must "'squarely address[] the issue in th[e] case' or establish a legal principle that 'clearly extend[s]' to a new context to the extent required by the Supreme Court in . . . recent decisions"; otherwise, there is no clearly established Federal law for purposes of review under AEDPA and the Court must defer to the state court's decision. *Moses v. Payne*, 555 F.3d 742, 754 (9th Cir. 2008) (alterations in original) (quoting *Wright v. Van Patten*, 552 U.S. 120, 125, 123 (2008)).

If the Court determines there is clearly established Federal law governing the issue, the Court then must consider whether the state court's decision was "contrary to, or involved an unreasonable application of, [the] clearly established Federal law." 28 U.S.C. § 2254(d)(1). A

state court decision is "contrary to" clearly established Supreme Court precedent if it "arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." *Williams*, 529 U.S. at 413. A state court decision involves "an unreasonable application of[] clearly established Federal law" if "there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [the Supreme Court's] precedents." *Richter*, 562 U.S. at 102. That is, a petitioner "must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 103.

If the Court determines that the state court decision was "contrary to, or involved an unreasonable application of, clearly established Federal law," and the error is not structural, habeas relief is nonetheless unavailable unless it is established that the error "had substantial and injurious effect or influence" on the verdict. *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993) (internal quotation marks and citations omitted).

AEDPA requires considerable deference to the state courts. The Court looks to the last reasoned state court decision as the basis for the state court judgment. *See Brumfield v. Cain*, 135 S. Ct. 2269, 2276 (2015); *Johnson v. Williams*, 568 U.S. 289, 297 n.1 (2013); *Ylst v. Nunnemaker*, 501 U.S. 797, 806 (1991). "When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Richter*, 562 U.S. at 99. Where the state court reaches a decision on the merits but provides no reasoning to support its conclusion, a federal court independently reviews the record to determine whether habeas corpus relief is available under § 2254(d). *Walker v. Martel*, 709 F.3d 925, 939 (9th Cir. 2013). "Independent review of the record is not *de novo* review of the constitutional issue, but rather, the only method by which we can determine whether a silent state court decision is objectively unreasonable." *Himes v. Thompson,* 336 F.3d 848, 853 (9th Cir. 2003). The federal court must review the state court record and "must determine what

arguments or theories . . . could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court." *Richter*, 562 U.S. at 102.

## IV. REVIEW OF CLAIMS

"Petitioner contends that the provisionary guidelines found within the California Rules of Court and its statutes were violated during the sentencing stage of" his case in Stanislaus County Superior Court. (ECF No. 1 at 9.) Petitioner contends that when he was convicted in 1998, "there were a number of limitations on consecutive sentences for subordinate terms and enhancements"; and that these "limitations were phased out between 1998 and 2001 with limitations on the amount of time that could be added to both the principal term and subordinate term for specific (conduct) enhancements." (*Id.*) Petitioner asserts that the sentencing court "made a determination it would impose punishment the way it saw fit rather [than] under the guidelines and regulations provided by California Rules of Court and the (DSL) Determinate Sentencing Law." (*Id.*) Petitioner asserts that during the November 23, 1998, sentencing hearing, the sentencing court "imposed a sentence that is unauthorized by law. . . ." (ECF No. 1 at 9-10.)

Petitioner appears to raise three grounds for relief. In his first ground for relief, Petitioner asserts that the sentencing court imposed the sentence in violation of California Penal Code section 1170.1, California Rules of Court, and *People v. Rodriguez*, 47 Cal. 4th 501, 213 P.3d 647 (2009). (ECF No. 1 at 10-13; ECF No. 14 at 5, 7.) In his second ground for relief, Petitioner asserts that the sentencing court's imposition of multiple enhancements to his sentence, and failure to stay and/or strike enhancements violates California Penal Code sections 186.22, 12022.5, and 1170.1, and other California law, and California Rules of Court. (ECF No. 1 at 11-13.) In his third ground for relief, Petitioner asserts that the sentencing court violated California law and California Rules of Court by failing to properly take into account "the degree of danger" posed by Petitioner. (ECF No. 1 at 12-13 (citing *In re Rodriguez*, 14 Cal. 3d 639, 654 (1975).)

**A. <u>Procedural Default</u>**

Respondent argues that this Court is precluded from reaching the merits of Petitioner's claims because the state court imposed a procedural bar when it denied Petitioner's third state habeas petition. (ECF No. 10 at 7-8.)

A federal court will not review a petitioner's claims if the state court has denied relief on those claims pursuant to a state law procedural ground that is independent of federal law and adequate to support the judgment. *Coleman v. Thompson*, 501 U.S. 722, 729-30 (1991). This doctrine of procedural default is based on the concerns of comity and federalism. *Id.* at 730-32. However, there are limitations as to when a federal court should invoke procedural default and refuse to review a claim because a petitioner violated a state's procedural rules. Procedural default can only block a claim in federal court if the state court "clearly and expressly states that its judgment rests on a state procedural bar." *Harris v. Reed*, 489 U.S. 255, 263 (1989).

In his third state habeas petition, Petitioner raised the exact same claims that he is raising in his federal habeas petition. A comparison of the third state habeas petition and the federal habeas petition demonstrates that the portions of both the state petition and the federal petition in which Petitioner sets forth his claims are identical (*Compare* ECF No. 1 at 8-36 *with* LD 32.) The Stanislaus County Superior Court denied Petitioner's third state habeas petition on procedural grounds in a reasoned decision. (LD 33.) The California Court of Appeal and California Supreme Court summarily denied the petition. (LDs 35, 37.)

In determining whether a state procedural ruling bars federal review, the Court looks to the "last reasoned opinion on the claim." *Ylst*, 501 U.S. at 804. Therefore, the Court will "look through" the California Court of Appeal and California Supreme Court's summary denials and examine the decision of the Stanislaus County Superior Court. *See Brumfield*, 135 S. Ct. at 2276; *Ylst*, 501 U.S. at 806.

In denying relief on Petitioner's third state habeas petition, the Stanislaus County Superior Court stated:

> The above Petition for Writ of Habeas Corpus was filed on or about 11/10/15 and referred to this court for review. This Court has reviewed the Petition, the Court's file, including but not limited to: all sentencing documents, appellate opinions, the

10/06/09 denial of a writ of habeas corpus, the 12/22/10 denial of writ of habeas corpus and the 6/13/14 denial of motion for transcripts.

The petitioner claims his 1998 sentence was unauthorized. This should have been raised on appeal and any previous petitions for habeas corpus relief. The petitioner gives a name of a case (Vargas 2014) in his petition but refers the Court to his "Attachment" for supporting cases and legal authority with no reference to a Vargas case or any law supporting the notion his sentence is unauthorized. The information in his attachment attacks the sentencing in general which was address[ed] in the Appellate Opinion and on remand back to the court. The Court resentenced the petitioner accordingly and subsequently he was resentenced a couple of times after requests for clarification from the California Department of Corrections. On 05/07/15 he was resentenced to less time than contemplated by the original trial Judge and incurred a benefit of a sentence reduction.

On the grounds the sentencing issues were addressed on appeal, the petitioner does not state any new grounds for review and he doesn't provide any facts establishing good cause for the delay and for filing a subsequent habeas petition, the petition is denied.

Based on the aforementioned reasons the petition for habeas corpus is DENIED in its entirety.

(LD 33.)

The Stanislaus County Superior Court clearly and expressly stated that its decision rests on alternative grounds, including that Petitioner's claims were untimely. (*Id.*) The denial of habeas relief on the ground the petition is untimely is an independent and adequate state procedural ground barring review of a subsequent habeas petition in federal court. *Walker v. Martin*, 131 S. Ct. 1120, 1124 (2011) (the practice of California courts to deny habeas petitions as untimely is adequate and independent state procedural ground that bars relief in federal court); *see Bennett v. Mueller*, 322 F.3d 573, 580 (9th Cir. 2003) (procedural bar still applies even if state court based its denial on alternative grounds, as long as at least one of them was an adequate and independent procedural ground). Accordingly, the Court finds that the Stanislaus County Superior Court applied an independent and adequate state procedural rule to deny Petitioner's third state habeas petition, and that the claims Petitioner brings in his federal habeas petition—which are identical to the claims he brought in his third state habeas petitioner—are procedurally defaulted.

A petitioner may, however, obtain federal review of a defaulted claim by demonstrating either "(1) 'cause for the default and actual prejudice as a result of the alleged violation of

federal law,' or (2) 'that failure to consider the claims will result in a fundamental miscarriage of justice.'" *Jones v. Ryan,* 691 F.3d 1093, 1101 (9th Cir. 2012) (quoting *Coleman*, 501 U.S. at 750)). Here, Petitioner contends that any procedural bar to his claims is the result of ineffective assistance of his counsel. (ECF No. 14 at 7.) Petitioner does not specify whether he is claiming the ineffectiveness of his trial counsel, his appellate counsel, or both.

To constitute cause for procedural default of a federal habeas claim, "the constitutional claim of ineffective assistance of counsel must first have been presented to the state courts as an independent claim." *Cockett v. Ray*, 333 F.3d 938, 943 (9th Cir. 2003). Here, Petitioner raised both an ineffective assistance of trial counsel claim and an ineffective assistance of appellate counsel claim in his first state habeas petition. (LD 25, 26.) However, the Stanislaus County Superior Court denied this first state habeas petition as defective because it was not signed by Petitioner. (LD 27.)

On December 16, 2010, fifteen months after the Stanislaus County Superior Court dismissed the first state habeas petition as defective, Petitioner filed his second state habeas petition. (LD 28.) The second state petition included the same claims as, and was merely a duplicate of, the first state petition. (LDs 28, 29.) The Stanislaus County Superior Court denied the second state petition as untimely. (LD 29.)

To the extent Petitioner raised an ineffective assistance of counsel claim in his *second* state habeas petition that relates to the issues he is now raising in his federal habeas petition, the dismissal of Petitioner's second state petition as untimely renders Petitioner's ineffective assistance of counsel claim procedurally barred and therefore insufficient to provide cause to excuse Petitioner's procedural default of the sentencing claims raised in his federal habeas petition. *See Edwards v. Carpenter*, 529 U.S. 446, 453-54 (2000) (holding that ineffective assistance of counsel claim can be procedurally barred even when asserted as cause to excuse another procedural default); *Walker*, 131 S. Ct. at 1124 (the practice of California courts to deny habeas petitions as untimely is adequate and independent state procedural ground that bars relief in federal court).

However, to the extent Petitioner raised an ineffective assistance of counsel claim in his

*first* state habeas petition that relates to the issues he is now raising in his federal habeas petition, it is not clear whether the claim is procedurally defaulted. Specifically, Petitioner's first state petition was dismissed by the Stanislaus County Superior Court because Petitioner failed to sign the petition. This requirement is found in California Penal Code section 1474, which provides that an application for writ of habeas corpus "is made by petition, signed either by the party for whose relief it is intended, or by some person in his behalf" and "must be verified by the oath or affirmation of the party making the application." Cal. Penal Code § 1474. There does not appear to be any federal decision finding a claim procedurally barred based on a state court's dismissal for lack of a petitioner's signature on a habeas petition.

In any event, assuming that Petitioner could show cause excusing his procedural default, and resulting prejudice, as discussed below, the grounds for relief included in Petitioner's federal habeas petition do not entitle Petitioner to habeas relief.

**B. Claims for Violation of State Law and State Rules of Court**

"[I]t is only noncompliance with *federal* law that renders a State's criminal judgment susceptible to collateral attack in the federal courts." *Wilson v. Corcoran*, 562 U.S. 1, 5 (2010) (*per curiam*); *see Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."); *Christian v. Rhode*, 41 F.3d 461, 469 (9th Cir. 1994) ("Absent a showing of fundamental unfairness, a state court's misapplication of its own sentencing laws does not justify federal habeas relief."). Petitioner may not "transform a state-law issue into a federal one merely by asserting a violation of due process." *Langford v. Day*, 110 F.3d 1380, 1389 (9th Cir. 1996).

In his first ground for relief, Petitioner asserts that the sentencing court imposed the sentence in violation of California Penal Code section 1170.1, California Rules of Court, and *People v. Rodriguez*, 47 Cal. 4th 501, 213 P.3d 647 (2009). (ECF No. 1 at 10-13; ECF No. 14 at 5, 7.) This ground for relief is based on violations of state law and state court rules which are not remediable on federal habeas review, even if state law was erroneously interpreted or applied. *See Swarthout v. Cooke*, 562 U.S. 216, 222 (2011) ("a 'mere error of state law' is not a denial of due process"); *Estelle*, 502 U.S. at 67–68 ("it is not the province of a federal habeas

court to reexamine state-court determinations on state-law questions"); *Miller v. Vasquez*, 868 F.2d 1116, 1118-19 (9th Cir. 1989) (whether enhancement should apply under California's sentence enhancement provisions is a question of state sentencing law for which federal habeas relief is unavailable); *Watts v. Bonneville*, 879 F.2d 685, 687 (9th Cir. 1989) (whether sentencing court violated state sentencing law is a state law claim for which federal habeas relief is unavailable); *Becerra v. California Dep't of Corr. & Rehabilitation*, 2016 WL 7324709, at *4 (E.D. Cal. 2016) (claim that sentencing court erroneously applied Cal. Penal Code section 1170.1 is a state law claim for which federal habeas corpus relief is unavailable); *cf. Windham v. Merkle*, 163 F.3d 1092, 1103 (9th Cir. 1998) (a federal habeas court has no authority to review alleged violations of a state's evidentiary rules). [8]

In his second ground for relief, Petitioner asserts that the sentencing court violated California Penal Code sections 186.22(b)(1), 12022.5(a), and 1170.1, and other California law, and California Rules of Court, when it imposed multiple enhancements to his sentence, and did not stay and/or strike enhancements. (ECF No. 1 at 11-13.) This ground for relief is based on violations of state law which are not remediable on federal habeas review, even if state law was erroneously interpreted or applied. *See Swarthout*, 562 U.S. at 222 ("a 'mere error of state law' is not a denial of due process"); *Estelle*, 502 U.S. at 67–68 ("it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions"); *Watts*, 879 F.2d at 687 (whether sentencing court violated state sentencing law is a state law claim for which federal habeas relief is unavailable); *Miller*, 868 F.2d at 1118–19 (whether enhancement should apply under California's sentence enhancement provisions is a question of state sentencing law for which federal habeas relief is unavailable) ); *cf. Windham*, 163 F.3d at 1103 (a federal habeas court has no authority to review alleged violations of a state's evidentiary rules).

In his third ground for relief, Petitioner asserts that the sentencing court violated California law and California Rules of Court by failing to properly take into account "the degree

---

[8] *People v. Rodriguez*, 213 P.3d 647 (Cal. 2009), cited by Petitioner, discusses only issues of California law; it does not include a discussion of federal law. Petitioner's citation to this case further demonstrates that his first ground for relief is based only on a violation of state law and state court rules, which are not cognizable in this federal habeas proceeding.

of danger" posed by Petitioner. (ECF No. 1 at 12-13 (citing *In re Rodriguez*, 14 Cal. 3d 639, 654 (1975).) This ground for relief appears to be based on violations of both state law and federal law. To the extent the third ground for relief is based on violations of state law or state rules of court, it is not remediable on federal habeas review, even if state law was erroneously interpreted or applied. *See Swarthout*, 562 U.S. at 222 ("a 'mere error of state law' is not a denial of due process"); *Estelle*, 502 U.S. at 67–68 ("it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions"); *Watts*, 879 F.2d at 687 (whether sentencing court violated state sentencing law is a state law claim for which federal habeas relief is unavailable); *Miller*, 868 F.2d at 1118–19 (whether enhancement should apply under California's sentence enhancement provisions is a question of state sentencing law for which federal habeas relief is unavailable) ); *cf. Windham*, 163 F.3d at 1103 (a federal habeas court has no authority to review alleged violations of a state's evidentiary rules).

The third ground for relief appears to also allege a violation of federal law based on the inclusion of a citation to and discussion of *In re Rodriguez*, 537 P.2d 384 (Cal. 1975). As respondent points out, *In re Rodriguez* describes California's pre-determinate sentencing law scheme, which is a state law claim. (ECF No. 10 at 14.) However, Petitioner is not citing *In re Rodriguez* only for the discussion of the indeterminate sentencing scheme. To the contrary, Petitioner appears to be citing the case for the proposition that his sentence is disproportionately long. The petition states:

> Petitioner invokes the authority under a decision provided by the California Supreme Court stating [t]hat it had held that sentencing decision must take into account 'the nature of the offense and/or the offenders, with particular regard to the degree of danger both present to society.' <u>In re Rodriguez</u> (1975) 14 C3d 639, 654, quoting <u>In re Lynch</u> (1972) 8 C3d 410, 425.

> In <u>In re Rodriguez</u> the Court released petitioner from further incarceration because "[i]t appears that nether the circumstances of his offense nor his personal characteristics establish a danger to society sufficient to justify such prolonged period of impri[son]ment". (Id at 655).

(ECF No. 1 at 12-13.)

The Court's review of the portion of *In re Rodriguez* cited by Petitioner, in combination with the arguments raised in his federal petition, convinces the Court that Petitioner is seeking

to argue that his sentence is unconstitutionally excessive or disproportionate punishment in violation of the Eighth Amendment of the U.S. Constitution. *See In re Rodriguez*, 537 P.2d at 391-92 ("[B]oth the Eighth Amendment and article I, section 17 [of the California Constitution], require that punishment be proportionate to the offense.")

With the exception of the claim that Petitioner's sentence is unconstitutionally excessive in violation of the Eighth Amendment, Petitioner raises only violations of state law which are not cognizable in this federal habeas proceeding.

## C. Eighth Amendment Claim that Sentence is Unconstitutionally Excessive

A criminal sentence that is "grossly disproportionate" to the crime for which a defendant is convicted may violate the Eighth Amendment. *Lockyer v. Andrade*, 538 U.S. 63, 72 (2003); *Rummel v. Estelle*, 445 U.S. 263, 271 (1980). However, outside of the capital punishment context, the Eighth Amendment prohibits only sentences that are extreme and grossly disproportionate to the crime. *United States v. Bland*, 961 F.2d 123, 129 (9th Cir. 1992) (quoting *Harmelin v. Michigan*, 501 U.S. 957, 1001 (1991) (Kennedy, J., concurring) ). Such instances are "exceedingly rare" and occur only in "extreme" cases. *Lockyer*, 538 U.S. at 73; *Rummel*, 445 U.S. at 272. "A punishment within legislatively mandated guidelines is presumptively valid. 'Generally, so long as the sentence imposed does not exceed the statutory maximum, it will not be overturned on eighth amendment grounds.'" *United States v. Mejia-Mesa*, 153 F.3d 925, 930 (9th Cir. 1998) (citation omitted).

Petitioner was convicted of burglary and multiple counts of robbery of an inhabited dwelling, with firearm and gang enhancements. In imposing consecutive sentences on the counts of conviction, the sentencing court found Petitioner's case "is a case for the aggravated term." The court noted that the witnesses who had testified at trial had been "terrorized by gang members," and had changed their testimony at trial as a result; that the underlying motive for the crime "may have been drugs or something of that nature"; and the case was one of "home invasion and terrorization of a group of people." (LD 13 at RT, Vol. X, pp. 1886-87.) The court found that the case involved "great violence, acts of high degree of cruelty and viciousness and callousness"; that there was particular vulnerability as a three-year-old child was present during

the crime; that "the manner in which the crime was carried out indicates planning and sophistication and professionalism"; that Petitioner had numerous prior convictions as an adult in addition to juvenile delinquency proceedings of "increasing seriousness"; that Petitioner was on parole at the time of the offense; and that Petitioner's prior performance on parole "was unsatisfactory." (*Id.* at pp. 1886-1889.)  The court found no mitigating circumstances. (*Id.* at 1889.) The court thus imposed consecutive sentences, for a total term of imprisonment of 48 years, which was subsequently reduced to 46 years, and then to 45 years and 8 months.

The Supreme Court generally has upheld prison sentences challenged as cruel and unusual, and in particular has approved punishments similar to or longer than Petitioner's 45 years and 8 months sentence, for offenses of lesser severity. *See Lockyer*, 538 U.S. at 77 (denying habeas relief on Eighth Amendment disproportionality challenge to California third strike sentence of two consecutive terms of 25 years to life for stealing $150 in videotapes when Petitioner had lengthy but nonviolent criminal history); *Ewing*, 538 U.S. at 31 (third strike sentence of 25 years to life for theft of golf clubs worth $1,200 is not grossly disproportionate when defendant previously had been convicted of residential burglaries and a robbery); *Harmelin*, 501 U.S. at 1008–09 (Kennedy, J., concurring) (mandatory life sentence without parole for first offense of possession of more than 650 grams of cocaine is not so disproportionate as to violate the Eighth Amendment); *Hutto v. Davis*, 454 U.S. 370, 374-75 (1982) (per curiam) (upholding non-recidivist sentence of two consecutive 25-year prison terms for possession of nine ounces of marijuana and distribution of marijuana); *Rummel*, 445 U.S. at 285 (mandatory life sentence with the possibility of parole within 12 years of initial confinement under recidivism statute for offense of obtaining $120 by false pretenses does not constitute cruel and unusual punishment where offender had two prior theft convictions); *cf. Solem v. Helm*, 463 U.S. at 280-81 (holding unconstitutional a mandatory life sentence without the possibility of parole imposed for uttering a "no account" check for $100, the petitioner's seventh nonviolent felony).

In light of the sentences approved by the U.S. Supreme Court in these cases, it cannot be said that Petitioner's sentence of 45 years and 8 months is unconstitutionally excessive.

Accordingly, Petitioner is not entitled to relief because he cannot show that his sentence is excessive in violation of the Eighth Amendment.

## V. RECOMMENDATION

The undersigned HEREBY RECOMMENDS that the petition for writ of habeas corpus be DENIED.

This Findings and Recommendation is submitted to the assigned United States District Court Judge, pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within **THIRTY (30) days** after service of the Findings and Recommendation, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation." Replies to the objections shall be served and filed within fourteen (14) days after service of the objections. The assigned United States District Court Judge will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).


IT IS SO ORDERED.

Dated:   __December 4, 2018__          _____/s/ Erica P. Grosjean_____
                                        UNITED STATES MAGISTRATE JUDGE